NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

VANESSA W., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.W., P.Q., O.W., J.R., NAVAJO
NATION, *Appellees*.

No. 1 CA-JV 17-0461
FILED 5-10-2018

Appeal from the Superior Court in Maricopa County
No. JD38127
The Honorable Bruce R. Cohen, Judge

**AFFIRMED**

COUNSEL

Clark Jones, Attorney at Law, Mesa
By H. Clark Jones
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Kenton D. Jones joined.

---

**M O R S E**, Judge:

¶1 Vanessa W. ("Mother") appeals the juvenile court's order terminating her parental rights to her four minor children. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Mother is the biological mother of four children: E.W. born in 2005, P.Q. born in 2006, O.W. born in 2010, and J.R. born in 2012.[1] In 2010, the Department of Child Safety[2] ("DCS") removed E.W., P.Q., and O.W. from Mother's care when she tested positive for methamphetamine and marijuana at O.W.'s birth. Mother complied with the services offered by DCS, and the dependency petition was dismissed.

¶3 In October 2015, DCS removed all four children from Mother's care and filed a dependency petition because Mother tested positive for methamphetamine and was reported to be selling drugs while caring for her children. The juvenile court found the children dependent.

¶4 DCS referred Mother to TERROS for substance abuse assessment and treatment in October 2015, and again in March 2016. Mother completed an intake assessment for each referral. The TERROS therapist diagnosed Mother with amphetamine use disorder and recommended outpatient treatment, which included group sessions, individual counseling, meetings with her case manager, and drug testing. At the assessments, Mother tested positive for methamphetamines and admitted to using methamphetamine during the previous year. In March

---

[1] The children's fathers' parental rights were also terminated, but the fathers are not parties to this appeal.

[2] The petition was brought by the Arizona Department of Economic Security, the predecessor to the Department of Child Safety. *See* S.B. 1001 § 157(D), 51st Leg., 2nd Spec. Sess. (Ariz. 2014).

2016, TERROS closed the October 2015 referral because Mother was neither participating in classes nor submitting to drug testing. TERROS closed the March 2016 referral in May 2016 because she continued to miss group sessions, even after she was warned that failure to attend would close out her treatment.

¶5        Mother also self-referred for substance abuse treatment. On September 10, 2016, Mother self-referred to TERROS, and a therapist again recommended outpatient treatment. Mother continued her pattern of inconsistent participation, and after missing multiple group sessions and refusing further services, her treatment was closed in January 2017. She then self-referred to Native American Connections' inpatient treatment program in March 2017. After 45 days, she had achieved only "partial resolution" and still demonstrated an "inability to take ownership of the events that lead her back into relapse." Native American Connections recommended its intensive outpatient program. She completed the intake assessments, but never returned for services, and Native American Connections discharged her from the outpatient program. Next, Mother started treatment with Southwest Behavioral, but her participation remained inconsistent.

¶6        Between October 2015 and September 2017, DCS provided Mother more than 10 referrals for drug testing. Each referral was closed after Mother missed multiple tests. DCS also provided Mother multiple parent aide and supervised visits referrals. Because she repeatedly missed visitations, Mother was ultimately required to call to confirm her attendance. However, she did not call to confirm, and the original parent aide and supervised visits referrals were closed out.

¶7        In October 2017, the juvenile court ordered the termination of Mother's parental rights based upon out-of-home placement of fifteen months, pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(c), finding DCS met the active efforts and diligent efforts requirements.

¶8        Mother timely appealed the juvenile court's order, and we have jurisdiction pursuant to A.R.S. sections 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

**DISCUSSION**

¶9        Mother argues only that the juvenile court erred in terminating her parental rights because DCS had not made active and reasonable efforts to provide her with rehabilitative services. We will

affirm a juvenile court's termination of parental rights absent an abuse of discretion and accept its findings of fact unless they are clearly erroneous. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

## I. Waiver

**¶10** The State argues that Mother waived her appeal rights as to the sufficiency of DCS's efforts, except as to a single request for intensive outpatient treatment. A parent's failure to raise an issue in the juvenile court, including whether DCS made an active and diligent effort to provide reunification services, precludes the parent from challenging that finding on appeal. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 16 (App. 2014).

**¶11** During the severance hearing, Mother raised issues related to caseworker turnover, caseworkers not returning her calls, and a lack of transportation assistance as issues that affected the services she was provided, which led her to seek services on her own. Mother did not challenge the "type or manner of services" DCS provided and has thereby waived the right to appeal this issue. *Id.* at ¶ 18. However, in our discretion, we address the merits of her appeal.

## II. Active and Diligent Efforts

**¶12** Mother argues that DCS failed to make active and diligent efforts as required by the Indian Child Welfare Act ("ICWA"), 25 U.S.C. § 1912(d), and A.R.S. section 8-533(B)(8).[3] We disagree.

**¶13** Termination of parental rights based upon out-of-home placement of 15 months requires DCS to demonstrate (1) that it "made a diligent effort to provide appropriate reunification services," and (2) the child was in out-of-home placement for 15 months, or more, while the parent was unable to remedy the circumstance that led to the placement and there is a substantial likelihood that the parent will not be able to provide effective parental care in the near future. A.R.S. § 8-533(B)(8)(c). Because Mother did not raise the second requirement in her appeal, she has

---

[3] The "active efforts" requirement is only applicable to O.W., who is an Indian child, while the "diligent efforts" requirement is applicable to all four children. While the active efforts requirement may be more stringent than diligent efforts, we are not required to reach this question to resolve Mother's appeal.

waived this argument, and we address only the diligent efforts requirement.

**¶14**      The termination of parental rights to an Indian child, pursuant to the ICWA, requires DCS prove by clear and convincing evidence that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." *Yvonne L. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 415, 421, ¶ 26 (App. 2011); 25 U.S.C. § 1912(d). "What constitutes 'active efforts' will vary, depending on the circumstances, the asserted grounds for severance and available resources." *S.S. v. Stephanie H.*, 241 Ariz. 419, 425, ¶ 21 (App. 2017). "[W]hether 'active efforts' were made and were unsuccessful requires both factual findings by the court about the nature and extent of the services provided and a legal conclusion about their adequacy." *Yvonne L.*, 227 Ariz. at 422, ¶ 28.[4]

**¶15**      Similarly, DCS must prove it made a diligent effort to provide appropriate reunification services, pursuant to A.R.S. section 8-533(B)(8). To meet the diligent efforts requirement, DCS must "provide services to the parent 'with the time and opportunity to participate in programs designed to help her to become an effective parent.'" *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 14 (App. 2011) (quoting *Maricopa Cty. Juvenile Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).

**¶16**      When DCS proves it met the active efforts requirement, pursuant to ICWA, the diligent efforts requirement is also satisfied because ICWA's "active efforts" requirement is at least as stringent as the "diligent efforts" requirement in A.R.S. section 8-533(B)(8). Thus, the same analysis may support a finding that DCS provided both active and diligent efforts.

**¶17**      Mother does not dispute that DCS provided her case management services, substance abuse assessment, substance abuse treatment, drug testing, parental aide visitations, and parenting skills training. Mother also does not dispute that she failed to complete these services.

**¶18**      Instead, Mother argues that DCS knew she had a history of substance abuse, but it provided only "bare minimum" services using a "cookie-cutter" approach instead of providing more intensive, inpatient

---

[4] We do not address whether the services provided were successful because Mother did not raise this issue on appeal.

treatment. In essence, Mother argues DCS failed to make active efforts because she refused to participate in the offered services. While DCS must make an active effort to provide services, it "cannot force a parent to participate in recommended services." *Yvonne L.*, 227 Ariz. at 423, ¶ 34. Further, DCS is not required to "provide every imaginable service or program." *Id.* The juvenile court found that had Mother successfully completed the services that were offered, "reunification likely would have occurred." Additionally, the ICWA expert testified that DCS made an active effort to provide Mother with services.

**¶19** Mother also argues that DCS failed to provide her transportation assistance, did not make accommodations for her work schedule, and frequently changed case managers. The record does not support these assertions. Mother regularly requested and received bus passes through DCS and other programs. Mother's referrals were closed not because of isolated missed appointments but because of her perpetual inconsistent participation. Even when she self-referred for treatment, Mother maintained inconsistent participation.

**¶20** Because substantial evidence in the record supports the juvenile court's finding that DCS made active and diligent efforts to provide Mother with required services, we affirm the juvenile court's termination of Mother's parental rights based on out-of-home placement of fifteen months, pursuant to A.R.S. section 8-533(B)(8)(c).

## CONCLUSION

**¶21** For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights.

